Hala J. Gores, OSB #89048
Hala J. Gores, P.C.
1332 SW Custer Drive
Portland, OR 97219
Tel: (503) 295-1940
Fax: (503) 295-2651
Hala@goreslaw.com
    Attorney for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### Portland Division

| | |
|---|---|
| VICKI FLYNN, individually and in her capacity as Personal Representative for the ESTATE OF JENEE HAMMEL, K.M. by and through his Guardian ad Litem, DANIEL MARCIANO<br><br>       Plaintiffs,<br>    v.<br><br>TRIMET, assumed business name of Tri-County Metropolitan Transportation District of Oregon, a municipal corporation; and SANDI DAY, an individual,<br><br>       Defendants. | Case No.<br><br>COMPLAINT<br><br>(Claims for Damages including Civil Rights Violations, Unreasonable Use of Force; Substantive Due Process; Monell Violations and Wrongful Death)<br><br>4th/14th Amendment Violations<br>42 U.S.C. 1983<br><br>JURY TRIAL REQUESTED |

## INTRODUCTION

Plaintiffs allege:

1.

Shortly before midnight on April 24, 2010, Defendant TriMet set in motion a chain of

events that led to the most destructive crash in its history. It happened when Defendant driver

Page 1 - COMPLAINT

Hala J. Gores, P.C.
Attorney at Law
The Gores Building
1332 SW Custer Drive
Portland, OR 97219
(503) 295-1940 Facsimile (503) 295-2651

Sandi Day cut illegally across two lanes of traffic, accelerated to 14 miles per hour, and drove her 17 ton bus with a known blind spot through a crowded Old Town crosswalk. She says her first sign of the catastrophe that followed was a girl's hair, floating like the wind directly in front of her. The crash left a trail of death and broken lives. Sandi Day's TriMet Bus 2514 dragged two unsuspecting young women, Danielle Sale and Jenee Hammel, underneath it for 60 feet. Unbelievably, they lived - until the bus rolled repeatedly over them and crushed them to death.  The bus swallowed a young man, Erik Gittings, under its front wheel. When it finally came to rest, he was forced to listen helplessly to his beloved Danielle die, while he survived with critical injures. Ryan and Jamie Hammel, young newlyweds, were thrown to safety. They tried frantically to help, but could do little but try to comfort Ryan's sister Jenee as she died in front of them. Unbelievably, at each critical step along this route to catastrophe, Defendant TriMet trained Ms. Day to do exactly what she did.

## JURISDICTION and VENUE

### 2.

This is a civil rights complaint brought for Fourth and Fourteenth Amendment violations against Defendants for the unlawful and illegal actions by Defendants Day and TriMet in the operation of the TriMet bus she drove into a group of pedestrians which killed two individuals and injured three others.

### 3.

This court has jurisdiction over Plaintiffs' claims of violations of federal constitutional rights under 28 U.S.C. §§ 1331 and 1343.

Page 2 - COMPLAINT

Hala J. Gores, P.C.
Attorney at Law
The Gores Building
1332 SW Custer Drive
Portland, OR 97219
(503) 295-1940 Facsimile (503) 295-2651

4.

Venue is proper under 28 U.S.C. §1391 (b), in that one or more of the defendants reside in the District of Oregon and Plaintiffs' claims for relief arose in this district.

**PARTIES**

5.

Jenee Hammel was 26 years old when she died on April 24, 2010, in the State of Oregon. She was a resident of the State of Oregon and a citizen of the United States.

6.

Plaintiff Vicki Flynn is the mother of Jenee Hammel, deceased, and the personal representative of her estate. Plaintiff K.M. is Jenee Hammel's son and was two years old at the time of his mother's untimely death. K.M.'s guardian ad litem is his father, Daniel Marciano, fiancé of Jenee Hammel.

7.

Defendant TriMet is an Oregon municipal corporation organized under the laws of the State of Oregon and is a special district entitled to be sued in its own capacity. TriMet is a person for purposes of 42 U.S.C. §1983. TriMet employed Defendant Day and was operating under color of law at all material times.

8.

Defendant Sandi Day is an individual who was employed by TriMet as a municipal bus driver and was the driver of the bus which crashed into and killed Jenee Hammel and Danielle Sales and injured Ryan Hammel, Jamie Hammel and Erik Gittings in Multnomah County. Defendant Day was acting under color of law at all material times in her capacity as a municipal bus driver employed by TriMet. Defendant Day is sued in her individual capacity.

Page 3 - COMPLAINT

Hala J. Gores, P.C.
Attorney at Law
The Gores Building
1332 SW Custer Drive
Portland, OR 97219
(503) 295-1940 Facsimile (503) 295-2651

## FACTUAL ALLEGATIONS

### 9.

TriMet and Day are defendants in a series of lawsuits now pending in Multnomah County for damages to all the victims for the conduct causing the crash. All of the victims to the bus crash have filed suit.

### 10.

Similarly, all plaintiffs are simultaneously filing federal actions for the civil rights claims held by the crash victims, the parents of the Danielle Sale, decedent, and the mother of Jenee Hammel.

### 11.

TriMet driver Defendant Day was driving a route she was unfamiliar with on April 24, 2010, near midnight when she made an unscheduled stop to allow her sole remaining passenger to disembark. The unscheduled stop was at a bus shelter designed for a different route on the far right hand lane of a two lane one way street, N.W. Glisan. The streets are narrow in Portland's "Old Town" where this stop occurred. This bus stop is only several feet from the extremely busy and normally heavily traveled Broadway. This intersection is also the last major intersection before Broadway crosses the Broadway Bridge.

### 12.

The area of town in which the crash occurred is frequented by numerous pedestrians as it is near the bus and train stations, Harvey's Comedy Club, and a number of galleries and restaurants dot the area.

### 13.

Defendant Day wears colored glasses she claims she needs to wear for reading in order to read the gauges on her dashboard. She also claims it cuts down on glare. The accident occurred late at night and these glasses made it more difficult for her to see in shadows.

Page 4 - COMPLAINT

Hala J. Gores, P.C.
Attorney at Law
The Gores Building
1332 SW Custer Drive
Portland, OR 97219
(503) 295-1940 Facsimile (503) 295-2651

14.

Defendant Day sits in the bus high above the road. She has a large rear-view mirror assembly outside the bus to her left which obstructs her visibility. The bus is equipped with nine different cameras which sit at various vantage points around the body of the bus.

15.

On that evening of April 24, 2010, Defendant Day was driving TriMet bus 2514 on TriMet route No. 9. The bus weighed 17 tons when empty, and measured 8 ½ feet across and 41 feet long. It contained a significant view obstruction for all of its drivers - a thick steel A-pillar to the left of the driver's cockpit that partially blocked the driver's view of pedestrians who were on, or coming from, the driver's left. It also contained an even more significant view obstruction for drivers like Defendant Day, who was 5 feet 3 inches tall. Immediately to the left of the A-pillar, a large rear-view mirror assembly measuring 8 ½ inches by 18 inches was attached to the outside of the bus at a level just below Defendant Day's head. This assembly blocked even more of Defendant Day's view of pedestrians on and coming from her left, in the manner shown in the post-collision police photograph attached as Exhibit 1. Defendant Day had been taught by TriMet supervisors and instructors how to attempt to compensate for this obstruction by "rocking and rolling" around it, but the bus cockpit was too small for her to effectively perform this maneuver.

16.

The visual obstruction of the A-pillar and driver's-side rear-view mirror assembly was the subject of several past complaints to TriMet about visibility problems for drivers. TriMet was aware of this visual obstruction and took no steps to correct it or to adjust the buses in any way to overcome it. Instead, TriMet taught its drivers to attempt to compensate for the obstruction by "rocking and rolling"—a maneuver that is extremely difficult for a short, stout driver to perform in the cockpit confines of a New Flyer low-floor bus such as Bus 2514.

Page 5 - COMPLAINT

Hala J. Gores, P.C.
Attorney at Law
The Gores Building
1332 SW Custer Drive
Portland, OR 97219
(503) 295-1940 Facsimile (503) 295-2651

17.

Defendant Day began her shift at 5:36 p.m. on the evening of April 24, 2010. A little over six hours later, the end of her route on TriMet Route 9 took her through downtown and near Northwest Portland. At 11:55 p.m. she was driving Bus 2514 north on Sixth Avenue through Portland's Old Town. After reaching N.W. Glisan she planned to turn left and drive the two blocks over to Broadway. From there she planned to turn left again to go south on Broadway, and drive back to TriMet's Powell Street garage to complete her shift and go home. This was not her usual route.

18.

At this time, a group of young family and friends had just enjoyed a Saturday night to a show at Harvey's Comedy Club, at 421 N.W. Sixth Avenue in Portland.  Jenee Hammel was a young mother looking forward to her upcoming August 28th wedding.  Ryan and Jamie Hammel were newlyweds. Their friends Danielle Sale, age 22, and Erik Gittings, age 23, lived together and were thinking about marriage.

19.

At 11:56 p.m. Defendant Day turned left onto Northwest Glisan from Sixth. She was directly across from Harvey's Comedy Club. She saw many people leaving the comedy club and knew that it was emptying for the night.

20.

The comedy show was full that night with 260 customers in the audience. It ended at 11:45 p.m. and customers began to leave.  Jenee Hammel, Ryan and Jamie Hammel, Danielle Sale and Erik Gittings were among the last to leave.  They went out the comedy club door on the southeast corner of Northwest Sixth Avenue and Glisan Street. They crossed Sixth Avenue heading west on Glisan Street's south sidewalk. They had very little to drink.  At .01, Jenee's blood alcohol level was far below Oregon's legal limit of .08.  They were all laughing, talking and walking in an appropriate manner.

Page 6 - COMPLAINT

Hala J. Gores, P.C.
Attorney at Law
The Gores Building
1332 SW Custer Drive
Portland, OR 97219
(503) 295-1940 Facsimile (503) 295-2651

21.

As Defendant Day turned left onto Glisan she had one remaining passenger on her bus. The passenger was an elderly security guard coming home from work. Official TriMet policy requires bus drivers to make unscheduled courtesy stops for elderly riders after 8 p.m.

22.

As Defendant Day neared her unscheduled stop there were numerous pedestrians walking on the south side of Glisan. Defendant Day recalls seeing several pedestrians on the sidewalk that night. Other witnesses recall hearing laughter and approximately ten individuals walking west on Glisan on the south sidewalk toward Broadway. The crosswalk goes across Broadway and is parallel to Glisan. The bus stop is very close by.

23.

Defendant Day made her courtesy stop at a bus shelter at the northeast corner of Glisan and Broadway pursuant to TriMet mandatory policy. This shelter was intended for another bus line that continued straight west on Glisan, rather than turning left onto Broadway.  This specific bus stop allows virtually no room for a bus to re-enter the proper left turn lane on Glisan before turning left onto Broadway. Glisan at this location is a westbound, one-way, two-lane street. Defendant Day was on the right side of Glisan when she made her unscheduled stop at the bus shelter.

24.

A Portland Police Bureau diagram of the collision scene and its aftermath is attached as Exhibit 2.

25.

Defendant Day stopped her bus partially in the north (number one) lane of Glisan with one car ahead of her. She discharged her passenger. A second car was ahead of her bus in the number two lane to her left. Defendant Day recalls seeing some pedestrians. A third car approached from behind her in the number two lane. While Defendant Day focused on that

Page 7 - COMPLAINT

Hala J. Gores, P.C.
Attorney at Law
The Gores Building
1332 SW Custer Drive
Portland, OR 97219
(503) 295-1940 Facsimile (503) 295-2651

third car she was not looking forward into the intersection. After the third car passed her, Defendant Day accelerated her bus across two lanes of Glisan before more cars could come from behind her. She had a large view obstruction from her left rear-view mirror as she did so. Defendant Day entered the intersection of Glisan and Broadway driving at 14 miles per hour in an arcing turn. She then drove her 17-ton bus south on Broadway and directly into a group of five unsuspecting young adults. These young people were in the protected crosswalk and were crossing properly with the walk light.

26.

The Hammels, Sale and Gittings group had waited for the light so they could walk across Broadway to their car in a legally protected crosswalk. The group was seen waiting several seconds at the curb for the walk light. They were heard laughing and having a good time. The intersection is lit on both sides of the street. The group had no inkling that Bus 2514 would be turning left across their path. After the light turned green, Danielle's friend Ryan Hammel stepped off the curb and led the way west across Broadway. Danielle followed him, holding hands with Erik Gittings, who was on her right, between her and Glisan Street. Jamie and Jenee brought up the rear. Police reports indicate Jamie may have straggled slightly. That may have been what saved her life.

27.

The bus hit Ryan first. It plastered him to the left windshield, then threw him to safety. The bus hit Jamie with its left side, then threw her clear as well. The bus also hit Jenee with its left side. Instead of knocking her away, it sucked her underneath. It then crushed Jenee to death under its two left rear wheels.

28.

Ryan Hammel recalls being thrown from the bus as if he had been hit by a ping pong paddle. He saw his wife thrown free and he saw the other three thrown under the bus. He watched as the bus rolled over his sister. He ran forward and hit the bus driver in the arm to

Hala J. Gores, P.C.
Attorney at Law
The Gores Building
1332 SW Custer Drive
Portland, OR 97219
(503) 295-1940 Facsimile (503) 295-2651

draw her attention. Defendant Day was unaware she had run completely over at least two people. Ryan Hammel screamed at Day to move the bus back. He was unaware that his friends were stuck under the bus on the other side. He ran to be with his sister and saw that she was wedged sideways between the bus frame and the ground. Then as he knelt to his sister who was still alive he watched in horror as the bus moved forward again crushing his sister underneath the wheel.

29.

Ryan watched his sister try to scream but she could make no noise. He watched as she bloated up as the bus crushed her and then she simply died. He held her head off the ground while she lay there. He kissed her repeatedly and told her he loved her. He knew she was dead when he walked away to find his wife.

30.

Defendant Day did not see the group until she saw a girl's hair float like the wind in front of her. The hair was probably Danielle's. Danielle and Erik both went down under the right front of the bus, which has a 14-inch clearance when the bus is not lowered to pick up wheelchair passengers. Defendant Day dragged Danielle and Erik under the bus for 60 feet along Broadway before she stopped, leaving drag mark - but no brake or skid mark - on the pavement. Defendant Day then reversed the bus after a bystander, likely Ryan Hammel, told her a woman was trapped under the left rear wheels. Defendant Day then pulled the bus forward after another bystander told her people were trapped under the front wheel.

31.

When Bus 2514 finally came to rest, Danielle and Erik were both pinned behind the right front wheel and Jenee Hammel was crushed under the driver's side rear wheel. Defendant Day turned the bus off, causing it to lower three inches. Jenee and Danielle were pronounced dead at the scene. Ambulances took Erik, Ryan and Jamie to area hospitals.

Page 9 - COMPLAINT

Hala J. Gores, P.C.
Attorney at Law
The Gores Building
1332 SW Custer Drive
Portland, OR 97219
(503) 295-1940 Facsimile (503) 295-2651

32.

A closeup from Exhibit 2, showing how Bus 2514 came to rest in the collision's aftermath, is attached as Exhibit 3.

33.

As Defendant Day made her left turn from Glisan onto Broadway, she knew the night sky was dark and overcast. She knew the intersection was dimly lit and contained many shadows. She knew her view to the left was obstructed by the A-pillar and rear view mirror assembly. She knew space was tight in the driver's cockpit and that she could not move easily in her seat to see around the view obstruction. She knew she was turning left illegally from the right of two westbound lanes, and that she would have to cross a lane and drive through traffic coming behind her on the left in order to make her turn. She knew that as she began her turn she would have to fix her attention behind her on the left to make sure she would not pull into cars coming from behind her. She knew that she had kept her attention fixed behind her, and not ahead at the intersection, after the light changed while several cars passed her. She knew that many pedestrians were in the area, because she had seen them leaving Harvey's Comedy Club only one block away. She knew that pedestrians were crossing Broadway along the left side of Glisan, because she had seen some of them complete the crossing. She knew that she had to look for movement to attempt to compensate for the mirrors' view obstruction.

34.

As Defendant Day drove through the intersection at Glisan and Broadway, she also knew that Oregon law required her to check and stop for pedestrians before crossing the oncoming travel lanes. She knew that Oregon law required her to drive slowly through turns at intersections. She knew that a safe speed during such turns was no more than 5 miles per hour. She knew that safe practice required her to turn through the intersection with her foot covering the brake. Defendant Day, however, in the face of the conditions and all her knowledge alleged above, made a conscious and deliberate choice to ignore these clear and

Page 10 - COMPLAINT

Hala J. Gores, P.C.
Attorney at Law
The Gores Building
1332 SW Custer Drive
Portland, OR 97219
(503) 295-1940 Facsimile (503) 295-2651

well established legal and safety requirements. Instead of driving at no more than 5 miles per hour she chose to drive through the intersection at 14 miles per hour – 2 1/2 to 3 times faster than she knew was safe. Instead of covering the brake, she chose to accelerate all the way through the intersection and its crosswalks. She never braked hard and did not brake at all until she knew she had hit a pedestrian. Instead of making sure no pedestrians were in her way, she drove through the south crosswalk as TriMet trained her to do, with knowledge of the likelihood pedestrians would be crossing in front of her.

35.

In acting as she did, Defendant Day was following the official policies, the official practices, and the defective training of her employer TriMet.

A.   TriMet has a policy and practice of encouraging its drivers to accelerate through turns at intersections at speeds of more than 10 miles per hour, even though TriMet managing officials state that drivers are supposed to cover the brake and travel no more than 5 miles per hour through the turn. This policy and practice is in violation of Oregon's Motor Vehicle Code.

B.   TriMet has a policy and practice of encouraging its drivers to illegally cross lanes while turning through intersections, and of illegally turning left from the right lane of a multiple-lane street. This policy and practice is in violation of Oregon's Motor Vehicle Code.

C.   TriMet has a policy and practice of assigning short-stature drivers to buses with a large A-pillar and rear-view mirror blind spots that they cannot properly see around.

D.   TriMet has a policy of requiring bus drivers to make unscheduled courtesy stops for elderly drivers after 8 p.m. TriMet requires such stops without regard for the safety of non-riders and without permitting drivers to depart from their preassigned route.

Page 11 - COMPLAINT

Hala J. Gores, P.C.
Attorney at Law
The Gores Building
1332 SW Custer Drive
Portland, OR 97219
(503) 295-1940 Facsimile (503) 295-2651

36.

Even though Defendant Day was acting in accord with TriMet policies she knew that many of her actions that night violated the Motor Vehicle Code as noted above. The Motor Vehicle Code of Oregon does not exempt TriMet and its bus drivers from these basic rules of the road. Furthermore, Day was convicted of Careless Driving, for which Plaintiff asks this court to take judicial notice in these proceedings.

37.

At the traffic trial of Defendant Day, TriMet officials, including official trainers and supervisors, testified under oath that Day did nothing wrong, that her actions were in full compliance with all her training and were within the policies of TriMet. These admissions are also incorporated herein.

### First Claim for Relief

### Fourth Amendment Unreasonable Seizure by Defendant Day

*Vicki Flynn, personal representative of the Estate of Jenee Hammel*

38.

Plaintiff Vicki Flynn, personal representative of the Estate of Jenee Hammel, realleges paragraphs 1-37.

39.

Jenee Hammel was entitled to be free from unwanted and unreasonable seizure of her person; and was protected from unlawful seizure of her person by and pursuant to the Fourth and Fourteenth Amendments to the United States Constitution.

40.

The acts and omissions of Defendant Day violated Jenee Hammel's protected rights, and were an extreme and excessive seizure of her person, and were objectively unreasonable based on the totality of circumstances and violated the rights held by Jenee Hammel to her life and the integrity of her person, those rights fully protected by the Fourth and Fourteenth Amendments to

Page 12 - COMPLAINT

Hala J. Gores, P.C.
Attorney at Law
The Gores Building
1332 SW Custer Drive
Portland, OR 97219
(503) 295-1940 Facsimile (503) 295-2651

the United States Constitution.

41.

The specific acts of Defendant Day, individually and in concert with each other, that Plaintiff Hammel claims were objectively unreasonable are more particularly set forth below:

A.    Defendant Day made a stop with her bus in such a way as to make the turn she needed to make unreasonably dangerous and illegal;

B.    Despite the fact that her bus was too big to safely move into the left lane of N.W. Glisan, Defendant Day chose to drive across two lanes of traffic and make an illegal left hand turn knowing that such a turn violated the law; ORS 811.340(1)(b);

C.    Defendant Day knew that she had reduced visibility and had a legal duty to maintain extra care in her lookout and she failed to do so by not driving slowly, reviewing the area carefully, making an illegal approach, ignoring the obvious indications of low lighting, the presence of pedestrians and her unfamiliarity with the terrain;

D.    Defendant Day was clearly aware of pedestrians as she saw them come from the Comedy Club, saw some of them walking and was distracted such that she failed to see the pedestrians standing at the corner of the sidewalk for nearly 30 seconds while she idled her bus only 40 feet from them;

E.    Defendant Day chose to speed through the intersection without braking until she hit the pedestrians with her 17 ton bus.  She also provided false information to the police officer investigating the accident by stating she was only going 5 mph and that the pedestrians ran in front of her bus. She plowed into a group of pedestrians that were plainly there for her to see. The fact that she claims she did not see them until this point indicates her complete failure to see where she was going; and

F.    Day failed to brake until the point of impact and when she did so she failed to

Page 13 - COMPLAINT

Hala J. Gores, P.C.
Attorney at Law
The Gores Building
1332 SW Custer Drive
Portland, OR 97219
(503) 295-1940 Facsimile (503) 295-2651

assess the situation and determine the next safe steps to take. Instead, reacting to the hysteria around her, she moved the bus backward and forward, running over the pedestrians two or three times while crushing them to death. She claims she did not see any of the passengers until she saw hair flying by. She hit Ryan Hammel when he was directly in front of her windshield.  Her seat sits high so that she can see in front of her.

42.

As a result of the violations of the Constitutional standards set forth herein,  Jenee Hammel was struck and seized by the driver, treated inhumanely and incurred extreme pain, injury and death when she was were wrongfully struck by TriMet bus 2514 driven by Defendant Day.

43.

As a result of these Constitutional violations to Jenee Hammel and the injuries and death she suffered, Vicki Flynn, as personal representative of the Estate of  Jenee Hammel seeks compensation set forth more specifically in the section of this Complaint entitled Damages.

**Second Claim for Relief**

**Fourth Amendment Substantive Due Process Violations by Defendant Day**

*Vicki Flynn,  personal representative of the Estate of Jenee Hammel*

44.

Plaintiff Vicki Flynn, personal representative of the Estate of Jenee Hammel,  realleges paragraphs 1-43.

45.

Jenee Hammel had the right not to have her life or liberty taken by government action without due process of law under the Fourteenth Amendment to the United States Constitution.

Page 14 - COMPLAINT

Hala J. Gores, P.C.
Attorney at Law
The Gores Building
1332 SW Custer Drive
Portland, OR 97219
(503) 295-1940 Facsimile (503) 295-2651

46.

The rights protected under the Fourteenth Amendment due process clause bar certain government actions regardless of the fairness of the procedures used to implement them. In this situation the Fourteenth Amendment is intended to prevent government officials from acting in ways that employ their powers as an instrument of oppression or menace.

47.

The substantive due process rights of the Fourteenth Amendment protect against the arbitrary governmental taking of Jenee Hammel's life, and the deprivation of her liberty by inflicting unconstitutional injury on her. They forbid persons acting under color of governmental authority from causing someone's death or serious injury by deliberate indifference. When governmental employees act in such a way they are interfering with fundamental rights implicit in the concept of an ordered liberty.

48.

Defendant Day performed her actions alleged above pursuant to her training by officials of Defendant TriMet, and in furtherance of TriMet's official policies and practices. These actions by defendants caused the injury to and death of Jenee Hammel in a manner depriving her of her life in violation of her constitutionally protected rights under the Fourteenth Amendment to be free from oppressive and menacing governmental action that causes death or great bodily harm with deliberate indifference.

### Third Claim for Relief

### Fourth Amendment Monell Claim against TriMet

### Unlawful Customs, Practices and Culture

*Vicki Flynn, personal representative of the Estate of Jenee Hammel*

49.

Plaintiff Vicki Flynn, personal representative of the Estate of Jenee Hammel, realleges paragraphs 1-48.

Page 15 - COMPLAINT

Hala J. Gores, P.C.
Attorney at Law
The Gores Building
1332 SW Custer Drive
Portland, OR 97219
(503) 295-1940 Facsimile (503) 295-2651

50.

At all material times TriMet had an official and unofficial policy or practice which promoted, allowed and even mandated bus drivers to violate traffic laws while driving city buses. The specific policies and practices are more fully outlined previously. These policies including making illegal turns, driving in excess of safe speed, violation of the basic rule, failure to keep a look out, and insistence on intentionally using unsafe and poorly designed buses, especially for short drivers.

51.

As a result of the unconstitutional official and unofficial policies or practices which were promoted, allowed or required within TriMet, Defendant Day drove in violation of the law which was a substantial factor in the catastrophic collision of April 24, 2010, and the resulting injuries and death suffered by Jenee Hammel.

52.

As a result of the official and unofficial policy, custom or practice to drive in violation of the law and to place cost, expediency and timely route schedules over human safety, these Plaintiffs and others were subjected to unreasonable seizure and enormous physical and emotional injury.

## Fourth Claim for Relief

## 42 USC §1983  Monell Claim against TriMet

## Policy, Practice, Custom and Culture of Inadequate Training

*Vicki Flynn, personal representative of the Estate of Jenee Hammel*

53.

Plaintiff Vicki Flynn, personal representative of the Estate of  Jenee Hammel,  realleges paragraphs 1-52.

Page 16 - COMPLAINT

Hala J. Gores, P.C.
Attorney at Law
The Gores Building
1332 SW Custer Drive
Portland, OR 97219
(503) 295-1940 Facsimile (503) 295-2651

54.

At all material times TriMet had an official and unofficial policy, custom or practice which promoted, allowed or facilitated the training of bus drivers to violate motor vehicle laws.

55.

As a result of the official and unofficial policy, custom or practice of TriMet in training bus drivers to ignore or violate well established motor vehicle laws, Defendant Day drove her bus in accordance with this training into a group of pedestrians which included Jenee Hammel, causing her significant physical and emotional injuries, and death. This training policy was unconstitutional per se and was the significant and driving cause of the injuries suffered by Jenee Hammel.

**Fifth Claim for Relief**

**Fourteenth Amendment Substantive Due Process against Day**

*Vicki Flynn and K.M, by and through his Guardian ad Litem*

56.

Vicki Flynn and K.M, by and through his Guardian ad Litem re-allege paragraphs 1-55.

57.

Jenee Hammel's mother and son have the right not to have their life or liberty taken by government action without due process of law under the and Fourteenth Amendments to the United States Constitution.

58.

The rights protected under the Fourteenth Amendment due process clause bar certain government actions regardless of the fairness of the procedures used to implement them. In this situation the Fourteenth Amendment is intended to prevent government officials from acting in ways that employ their powers as an instrument of oppression or menace.

Page 17 - COMPLAINT

Hala J. Gores, P.C.
Attorney at Law
The Gores Building
1332 SW Custer Drive
Portland, OR 97219
(503) 295-1940 Facsimile (503) 295-2651

59.

The substantive due process rights of the Fourteenth Amendment protect against the arbitrary governmental taking of Jenee Hammel's life. They forbid persons acting under color of governmental authority from causing someone's death by deliberate indifference. When governmental employees act in such a way they are interfering with fundamental rights implicit in the concept of an ordered liberty.

60.

In our nation, parents have a constitutionally protected liberty interest in the society and companionship of their child. This right is found under the substantive due process clause of the Fourteenth Amendment. Jenee Hammel's mother may maintain an action under that provision for unlawful deprivation of their right to her daughter's society and companionship.

61.

In our nation, children have a constitutionally protected liberty interest in the society and companionship of their parents. This right is found under the substantive due process clause of the Fourteenth Amendment. Jenee Hammel's son may maintain an action under that provision for unlawful deprivation of his right to his mother's society and companionship.

62.

Defendant Day performed her actions alleged above pursuant to her training by officials of Defendant TriMet, and in furtherance of TriMet's official policies and practices. These actions by Defendants caused the death of Jenee Hammel in a manner depriving her of her life in violation of her constitutionally protected rights under the Fourteenth Amendment to be free from oppressive and menacing governmental action that causes death or great bodily harm with deliberate indifference.

63.

As a result of the deliberate indifference of Defendants in implementing and following TriMet's training, policies and practices, Vicki Flynn has lost the society, companionship, and

Page 18 - COMPLAINT

Hala J. Gores, P.C.
Attorney at Law
The Gores Building
1332 SW Custer Drive
Portland, OR 97219
(503) 295-1940 Facsimile (503) 295-2651

love of her daughter. She has lost the ability to watch her marry, have more children, care for them as they age.  K.M. has lost the society, companionship, and love of his mother, Jenee Hammel.

### Sixth Claim for Relief

### Fourteenth Amendment Monell Claim against TriMet

### Unlawful Customs, Practices and Culture

*Vicki Flynn and K.M. by and through his Guardian ad Litem*

64.

Plaintiffs Vicki Flynn and K.M reallege paragraphs 1-63.

65.

At all material times TriMet had an official and unofficial policy or practice which promoted, allowed and even mandated bus drivers to violate traffic laws while driving city buses. The specific policies and practices are more fully outlined previously. These policies including making illegal turns, driving in excess of safe speed, violation of the basic rule, failure to keep a look out, and insistence on intentionally using unsafe and poorly designed buses, especially for short drivers.

66.

As a result of the unconstitutional official and unofficial policies or practices which were promoted, allowed or required within TriMet, Defendant Day drove in violation of the law which was a substantial factor in the catastrophic collision of April 24, 2010, and the resulting injuries and death suffered by Jenee Hammel.

67.

As a result of the official and unofficial policy, custom or practice to drive in violation of the law and to place cost, expediency and timely route schedules over human safety, Vicki Flynn has lost her daughter and K.M. has lost his mother and suffered all the injury that occurs when a loving mom loses her beloved daughter and a two year old boy loses his mother.

Page 19 - COMPLAINT

Hala J. Gores, P.C.
Attorney at Law
The Gores Building
1332 SW Custer Drive
Portland, OR 97219
(503) 295-1940 Facsimile (503) 295-2651

**Seventh  Claim for Relief**

**42 USC §1983  Monell Claim against TriMet**

**Policy, Practice, Custom and Culture of Inadequate Training**

*Vicki Flynn and K.M. by and through his Guardian ad Litem*

68.

Plaintiffs Vicki Flynn and K.M. reallege paragraphs 1-67.

69.

At all material times TriMet had an official and unofficial policy, custom or practice which promoted, allowed or facilitated the training of bus drivers to violate motor vehicle laws.

70.

As a result of the official and unofficial policy, custom or practice of TriMet in training bus drivers to ignore or violate well established motor vehicle laws, Defendant Day drove her bus in accordance with this training into a group of pedestrians which included Jenee Hammel, causing her significant physical and emotional injuries, and death. This training policy was unconstitutional per se and was the significant and driving cause of the injuries suffered by Jenee Hammel.

**Damages**

71.

Plaintiffs reallege paragraphs 1-70.

72.

Defendants' unconstitutional actions and omissions caused Jenee Hammel's injuries and death.

73.

This cause of action is brought to recover damages for the injuries sustained, including the wrongful death of Jenee Hammel, and the damages Plaintiffs suffered as a direct result of the

Page 20 - COMPLAINT

Hala J. Gores, P.C.
Attorney at Law
The Gores Building
1332 SW Custer Drive
Portland, OR 97219
(503) 295-1940 Facsimile (503) 295-2651

deprivation of Plaintiffs' civil rights, under the terms and provisions of the laws, statutes and judicial decisions of the United States.

74.

At the time of her death, Jenee Hammel was 26 years old, and had a life expectancy subject to proof at trial. She was a wonderful mother to her 2 year old son and loving fiancé to Daniel Marciano. She was devoted to her family and their welfare. She was kind, compassionate and affectionate. She was a talented artist and poet. She was in excellent health and had her entire future ahead of her.

75.

Jenee Hammel supported her family and provided them with love, care, comfort, and society. She would have continued to aid, support, comfort, advise and counsel her family. But for her tragic early death, it is probable that during the remaining years of her life, Jenee Hammel would have contributed substantially toward the support of her family.

76.

As the personal representative of the Estate of Jenee Hammel, deceased, Plaintiff Vicki Flynn is entitled to an award on behalf of the heirs of the Estate for appropriate distribution of the following damages:

A.  Burial services and memorial service expenses;

B.  General damages for the deprivation of Jenee's civil rights, including her right to life;

C.  Pecuniary loss to the estate, including loss of earnings based upon the probable duration of Jenee's life had the injury not occurred, in an amount to be proved at trial;

D.  Pain and suffering damages that Jenee suffered between the time of her injuries and her death, in an amount to be proved at trial;

Page 21 - COMPLAINT

Hala J. Gores, P.C.
Attorney at Law
The Gores Building
1332 SW Custer Drive
Portland, OR 97219
(503) 295-1940 Facsimile (503) 295-2651

E.    Damages for Jenee's loss of consortium with her mother and son, in an amount to be proved at trial; Attorneys' fees, as allowed by law in 42 U.S.C. § 1988; and

F.    Costs of this action, and for any other further relief as this Court deems equitable and proper.

77.

As a direct and proximate result of Defendants' deprivations of Jenee Hammel's federal civil rights, Plaintiff Vicki Flynn suffered the loss of her beloved daughter and K.M. suffered the loss of his beloved mother. Plaintiffs each are entitled to be compensated for their loss that is the direct result of Defendants' actions in depriving Jenee Hammel of her civil rights. Each of them are entitled to an award of damages for:

A.    Loss of the society, companionship and services of Jenee Hammel in an amount to be proved at trial;

B.    Pecuniary loss in an amount to be proved at trial;

C.    Attorneys' fees, as allowed by law in 42 U.S.C. § 1988; and

D.    Costs of this action, and for any other further relief as this Court deems equitable and proper.

### Attorney Fees and Costs

Plaintiff is entitled to an award of attorneys fees and costs pursuant to 42 U.S.C. §1988.

### Jury Demand

78.

Plaintiffs demand a jury trial.

### Prayer for Relief

WHEREFORE, Plaintiff Vicki Flynn, in her capacity as the personal representative of the Estate of Jenee Hammel, and Plaintiffs Vicki Flynn and K.M, by and through his Guardian ad

Page 22 - COMPLAINT

Hala J. Gores, P.C.
Attorney at Law
The Gores Building
1332 SW Custer Drive
Portland, OR 97219
(503) 295-1940 Facsimile (503) 295-2651

litem, request that this Court grant judgment as follows:

1.    Against the Defendants for economic damages in an amount consistent with the allegations of their complaint and to be proven at trial;

2.    Against the Defendants for noneconomic damages in an amount consistent with the allegations of their complaint and to be proven at trial; and

3.    For costs, interest, attorney fees and such other and further relief as the Court deems just and equitable.

Dated the 20th day of April 2012.

HALA J. GORES, P.C.

Hala J. Gores, P.C., OSB 89048

1332 SW Custer Drive
Portland, OR 97219
Tel:  (503) 295-1940
Fax: (503) 295-2651
Hala@goreslaw.com
    Attorney for Plaintiffs

Page 23 - COMPLAINT

Hala J. Gores, P.C.
Attorney at Law
The Gores Building
1332 SW Custer Drive
Portland, OR 97219
(503) 295-1940 Facsimile (503) 295-2651